**WALLING, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. COMET CARRIERS, Inc.**

**No. 367.**

Circuit Court of Appeals, Second Circuit.

Aug. 17, 1945.

Douglas B. Maggs, Sol., and William S. Tyson, Asst. Sol., both of Washington, D. C., Irving Rozen, Regional Atty., Dept. of Labor, of New York City, Harold C. Nystrom, Atty., Dept. of Labor, of New York City, James F. Scott, Atty., Dept. of Labor, of Canton, Ill., and Robert A. Levitt, Atty., Dept. of Labor, of Minneapolis, Minn., for plaintiff.

Ralph D. Elmer, of New York City (Herbert Burstein, of New York City, of counsel), for defendant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The Administrator of the Wage and Hour Division of the Department of Labor brought this suit in the District Court for the Southern District of New York for an injunction to prevent further violations by the defendant, a New York corporation, of § 15(a) (1), (2) and (5) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201, et seq. The injunction sought was in part granted and in part denied and both parties have appealed.

The plaintiff contends that the employees of the defendant are engaged in the production of goods for commerce within the meaning of § 3(j) of the Fair Labor Standards Act, supra, and if they are the record shows that the defendant has violated that statute by failing to pay them minimum wages plus overtime as required. Indeed, that is not contested on this appeal. But the defendant insists that its employees are

all engaged in interstate commerce of a kind which subjects them to regulation by the Interstate Commerce Commission under § 204(a) (1) of the Interstate Commerce Act, Part II, commonly known as the Motor Carrier Act of 1935, 49 U.S.C.A. § 304(a) (1). If the defendant is right, they are exempt from regulation by the plaintiff under § 13(b) (1) of the Fair Labor Standards Act.

The defendant provides transportation services and facilities in connection with the garment industry which is principally located in what is called the New York City Garment Center, "an area bounded by Broadway on the East, Ninth Avenue on the West, 35th Street on the South and 40th Street on the North, in the Borough of Manhattan."

In the making and selling of clothing the garment industry is operated substantially as follows: So-called manufacturers or jobbers take orders for goods from customers located both inside and outside the State of New York. They buy the raw materials and usually cut the cloth to conform to the styles and designs ordered. Then these partially processed garments, together with whatever additional materials are needed to finish the garments, are sent to so-called contractors who complete the work and send the finished garments back to the manufacturers. They are then inspected, packed and shipped to the customers who have ordered them. Sometimes garments are thus manufactured in advance of orders and stored in warehouses from which orders are filled as received.

The defendant has nothing to do with the transportation of the finished goods from the manufacturers to their customers, but its work consists wholly of the carriage of materials and goods to and from contractors. It has its principal office and place of business at 315 West 36th St. in the City of New York, where as the trial court found "it maintains a store which is utilized as a depository for hand trucks, box trucks, rolling racks, hangers and canvas bags, used and owned by the defendant, and also as a receiving depot for materials and merchandise cut and uncut, processed garments brought in from jobbers, manufacturers and contractors in the Garment Center nearby defendant's store to be delivered in the immediate vicinity by hand trucks or box trucks or to be loaded on to motor trucks owned by defendant for delivery to points the great majority of which

are situated within the State of New York, although some are located in nearby States."

It owns and uses four large motor trucks and among its employees are four motor truck drivers, four drivers' helpers and two hand truckers or pushers. Each motor truck is usually operated by a driver who has a driver's helper. The hand truckers push small vehicles carrying substantially the same kind of goods and materials but only within the area of the garment industry in New York City. About 10½% of the defendant's business in each year consists in transportation across state lines.

It is chiefly engaged in handling and carrying piece goods, cut goods, buttons, shoulder pads, completed materials, linings, furs, interlinings, canvas bags and hangers for ladies' coats and suits by motor trucks, hand trucks and box trucks from its store and from the place of business of about twenty manufacturers in the garment center to about fifty contractors who are mostly located in New York City, though some are on Long Island and some are in nearby states; and in handling and carrying the finished goods back to the manufacturers, who then inspect and prepare them for shipment to their customers largely in interstate commerce or for storage until they are thus shipped later.

The court also found that "The greater part of the goods handled and transported by employees of defendant are produced for interstate commerce. They have been and are transported and delivered by defendant with knowledge that at some later date the jobbers and manufacturers will sell or ship the garments in interstate commerce." Further, "Two of defendant's employees, a truck driver and driver's helper working on the same motor truck, for a period of six or seven weeks immediately prior to the trial, made some deliveries of processed garments at the direction of the manufacturer, from the plant of the contractor to the chain store warehouse of J. C. Penney & Co. in New York City. Other employees of defendant occasionally made similar deliveries of processed garments to the J. C. Penney and Lerner Shops, Inc., warehouses, from which many of the garments are later shipped to stores in other States."

 Thus it appears that the truckmen of the defendant and their helpers perform necessary services in connection with the production of goods for commerce and that in performing about 10½% of these

services they carry raw materials and partly processed goods across state lines. They are engaged in the sort of activity necessary for manufacture in the way the garment industry operates. The employees who carry materials and goods from manufacturers to contractors to be processed, and who take finished goods back to the manufacturers to be made ready for shipment or to warehouses for storage and later shipment, work in the production of goods within § 3(j) of the Fair Labor Standards Act. Rockton & R. R. Co. v. Walling, 4 Cir., 146 F.2d 111. Though they are engaged in transportation, their work is a part of the handling for production and is not transportation for the delivery in commerce of an article after production has ended. These employees, of course, handle what they transport from one point to another during the process of making the raw materials into finished garments and their work falls squarely within § 3(j), which covers "every step in putting the subject of commerce in a state to enter commerce." Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 504, 65 S.Ct. 335, 342.

■ This transportation of goods and materials to and from manufacturers and contractors, with their incidental handling, does not differ, so far as coverage by the Act is concerned, from necessary handling and carriage of goods and materials from place to place in a single factory during production. There is no "practical continuity of movement of the goods until they reach the customers for whom they are intended." See, Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 335, 87 L.Ed. 460. After the defendant's services have all been performed, the finished goods have to be handled again to complete the production needed to make them ready for shipment to customers, and until production which does not itself require interstate shipment is complete the goods and materials have not begun their interstate movement to customers outside New York. The hours of service by those employees of the defendant who perform their work wholly within the state of New York are not subject to regulation by the Interstate Commerce Commission and therefore are not within the exemption relied on by the defendant. Walling v. Villaume Box & Lumber Co., D.C.Minn., 58 F.Supp. 150.

■ For the same reasons those employees of the defendant who, as a necessary part of the work of production of goods for commerce, do transport across state lines goods and materials to and from manufacturers and contractors are within the coverage of the Fair Labor Standards Act, save only those whose hours of work may be regulated by the Interstate Commerce Commission. Only the hours of work of those whose services affect the safety of operation of the trucks engaged in interstate or foreign commerce may be regulated by the Interstate Commerce Commission. United States v. American Trucking Ass'ns, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. The Fair Labor Standards Act is a remedial statute, Phillips v. Star Overall Dry Cleaning Laundry Co., 2 Cir., 149 F.2d 416, and the burden rested on the defendant to show which, if any, of its employees who were actually engaged in the production of goods for commerce came within the exemption. Helliwell v. Haberman, 2 Cir., 140 F.2d 833. Its only employees who on this record can be thus exempt are the drivers of the interstate trucks, and possibly their helpers, for the latter may be engaged in helping the drivers perform work which affects the safety of operation. That has not been made altogether clear, and if all they do is to help load and unload they are not within the exemption.

■ But those of defendant's employees whose work does affect the safety of operation of the trucks in which the approximately ten per cent of the defendant's transportation service is across state lines may be subject to regulation by the Interstate Commerce Commission as to their qualifications and the maximum number of hours they may work in any one work week. This regulation does not restrict the number of hours they may work in intrastate transportation, but the hours they do work in such transportation are counted in determining whether additional work in interstate commerce will exceed the maximum of sixty hours permitted in any one work week to persons whose hours of employment are subject to regulation. Though the Commission has not attempted to prescribe qualifications for any of the defendant's employees or to regulate the hours of their work, nothing turns upon that fact; it is the power to regulate, and not its exercise, which counts. Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244.

■ The Commission has ruled that safety employees engaged in interstate commerce for a substantial part of their time in any one work week are subject to regulation by it as to qualifications and maximum hours of service for that work week. Ex parte No. MC–2, 28 M.C.C. 125, 139. While that interpretation of its power is not binding upon us, it is to be accorded great weight and we feel constrained to give it effect. United States v. American Trucking Associations, supra; Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161.

The trial court held, relying upon Ex parte No. MC–3, 23 M.C.C. 1, 39, that safety employees of the defendant engaged at least one day a week in carriage across state lines were exempt for that week. Whether or not that was a substantial amount of work would, of course, depend upon the extent of work thus done and at least one day's work in any one week could reasonably be considered substantial.

However, the findings show that from April 1943 up to within a month or two of the trial two of defendant's employees—a truck driver and a driver's helper—were engaged on three separate days in each week in making a round trip from a manufacturer in New York to a contractor in New Jersey and that the total time consumed in making this round trip and delivery on each occasion was only about one hour. The deliveries to the chain store warehouses, upon which the defendant relies to show that safety employees so engaged were exempt, see Fletcher v. Grinnell Brothers, 6 Cir., 150 F.2d 337, were designated as "some deliveries" and "occasional deliveries," which fairly described them as proved.

The Administrator of the Wage and Hour Division has defined the scope of the exemption in § 13(b) (1) in a manner which conflicts with the ruling of the Commission. See Interpretative Bulletin No. 9 (October 1943). His interpretation was made for the guidance of those engaged in administering the Act under his supervision and is, in short, that "Congress did not intend that this exemption should be available as a vehicle to exempt employees who spend most of their time in work other than that which forms the basis of the exemption."

■ Perhaps this would be a desirable way to resolve the inevitable conflict in the jurisdiction of these two administrative agencies. The Interstate Commerce Commission is primarily concerned with the maintenance of safety in interstate and foreign commerce, and its restriction of the number of hours in which those so engaged may work in any one work week is obviously intended to prevent accidents due to fatigue, without regard to considerations of adequacy of compensation; while the Administrator of the Wage and Hour Division is primarily concerned with the elimination of substandard wages, regardless of the number of hours worked or the effect of fatigue upon the workers. We think, however, that the plain language of § 13(b) (1) of the Fair Labor Standards Act cannot be construed so loosely as the Administrator construes it. That section exempts from the provisions of § 7 of the Act "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935." There is nothing in the last-mentioned statute which limits the power of the Commission to regulate qualifications and maximum hours of work to those of employees who are engaged in interstate commerce for the greater part of their working time in any one work week. So to construe it would seriously impair the effectiveness of control over the safety of operation and would leave much interstate and foreign carriage by motor vehicle unregulated in that respect.

■ Nor need we so construe it in this instance. Proof that two employees worked only three hours a week in interstate transportation and that two employees made "some" and "occasional" deliveries to the warehouses of chain stores and worked the remaining time in the production of goods for commerce does not satisfy the requirement that the amount of time during which they are engaged in interstate commerce be substantial. This comparatively small amount of work was not enough to put the employees who performed it within the Commission's power of regulation and left them outside the exemption provided in § 13(b) (1) of the Fair Labor Standards Act. See, Levinson v. Spector Motor Service, 389 Ill. 466, 59 N.E.2d 817.

Judgment affirmed on the defendant's appeal and reversed on the appeal of the plaintiff.