WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor, v. GRIFFIN CARTAGE CO., Inc.

No. 4350.

District Court, E. D. Michigan, S. D.

Aug. 30, 1945.

398

Charles A. Reynard, Regional Atty., U. S. Dept. of Labor, of Cleveland, Ohio, for plaintiff.

Matheson, Dixon & Brady, of Detroit, Mich., for defendant.

PICARD, District Judge.

This is an action by the administrator of the Wage and Hour Division, United States Department of Labor, filed pursuant to Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 217, seeking injunction against defendant and claiming violation of the overtime provisions of the act.

## Facts.

Defendant, a common carrier by motor vehicle, has a general cartage business in Wayne County. Less than one percent is in interstate commerce and while cartage services are available to the general public, 95 percent of defendant's business is transporting castings, forgings and machine parts for and between two or three Detroit plants. Defendant transports these articles from plants where they have been partly manufactured to others where additional steps in the production of the finished goods are performed and then carries the completed products to Ford Motor Company and Chrysler also in and about Wayne County, to become component parts of trucks, automobiles, other machines and military equipment sold and shipped in interstate commerce.

On June 12th, 1944 the National War Labor Board issued a directive giving truck drivers a 48 hour week instead of 54 with time and one-half after 48 hours. But the War Labor Board recognized that the Administrator, plaintiff herein, at that time was claiming that defendant's truck drivers came under the Fair Labor Standards Act and, subsequent to the issuance of its order in correspondence with Administrator's counsel, acknowledged that the order was not intended to express the Board's opinion concerning applicability of overtime provisions of the Act to these drivers. In this correspondence the Board likewise made it clear that it was expressing no opinion whether adherence to its order would constitute compliance with the Act and expressly called attention to the fact that the statute and executive order under which it operates gives it no authority to interpret or apply provisions of the Fair Labor Standards Act.

Plaintiff Administrator admits that defendant's employees herein concerned are not engaged in interstate commerce but bases his contention entirely on that clause of Section 7, 29 U.S.C.A. § 207, which provides that no employee "who is engaged * * * in the production of goods for commerce" shall be employed for a work week longer than 40 hours, etc. He claims, of course, that these truckers are engaged in the "production of goods for commerce" because Section 3(j) of the Fair Labor Standards Act, 29 U.S.C.A. § 203(j), provides that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods * * * in any State."

Defendant denies these men are engaged "in the production of goods for commerce" and asserts further that it is subject to Section 15(a)(1), 29 U.S.C.A. § 215(a)(1), which grants common carriers immunity from liability from the transportation in commerce in the regular course of business, of goods not produced by such common carrier.

Defendant also claims these drivers are exempt from the overtime provisions of the Act by Section 13(b)(1) thereof, 29 U.S.C.A. § 213(b)(1), applicable to employees whose qualifications and maximum hours of service are subject to regulation by the Interstate Commerce Commission under provisions of the Motor Carrier Act 1935, 49 U.S.C.A. § 304.

Defendant further claims these employees come under Section 13(a)(2) of the act which exempts from coverage employees of a retail or service establishment whose selling or servicing is intrastate commerce; that the employees affected have an employment contract with this defendant above the minimum prescribed in the act which should not be disturbed and that the application of the Fair Labor Standards Act to defendant's operators is unconstitutional.

## Conclusions of Law

The main question is whether these employees are engaged in "producing goods for commerce" and while it is seemingly a stretch of the imagination to even consider that carting goods from one

place to another in Wayne County can be "producing," it appears that by the statutory definition of the word "produced" and sound decisions interpreting and applying it, such an employee is engaged in the production of goods for commerce when his labors further the journey and thereby complete the goods into the final product which is sold in interstate commerce. Rockton & Rion Railroad Co. v. Walling, 4 Cir., 146 F.2d 111; Bracey v. Luray, 4 Cir., 138 F.2d 8.

It is to be noted that the words in the act specifically cover "handling, transporting," etc., and the great weight of authority does hold that if an employee handles or transports such goods he is engaged in the production of goods for commerce. Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335; Fox v. Standard Oil Co., 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780.

There seems however to be a variance between interpretations of the above citations, particularly the Western Union opinion but as you analyze these cases and the entire trend of these decisions the United States Supreme Court has seemingly laid down these fundamentals: to-wit, that where an employee transports goods within the State of Michigan he is not engaged in commerce, but where he transports goods from one state to another he is in commerce. So far there is little dispute. The decisions proceed to point out however that Congress can—and this is important—in order to prevent unfair goods from entering commerce, regulate the wages and hours of employees as well as all steps in the manufacturing of goods to be shipped in interstate commerce and it is apparent that Congress has defined the production of goods for commerce as it has so that it can catch up into "the category of production every step in putting the subject of commerce into a state to enter commerce." Western Union case, supra [323 U.S. 490, 65 S.Ct. 342].

One notes the high court's distinction in the following extracts from the Western Union opinion:

"The Government contends that in defining 'produced' the statute intends 'handled' or 'worked on' to mean not only handling or working on in relation to producing or making an article ready to enter interstate transit, but also includes the handling or working on which accomplishes the interstate transit or movement in commerce itself. If this construction is adopted, every transporter, transmitter, or mover in interstate commerce is a 'producer' of any goods he carries."

Also:

"Its artificial definition, if construed to mean that 'handling' and 'worked on' catches up into the category of production every step in putting the subject of commerce into a state to enter commerce, is a sensible and useful one, and not at odds with any other section of the Act."

And:

"They serve a useful purpose when read to relate to all steps, whether manufacture or not, which lead to readiness for putting goods into the stream of commerce."

"We are clear that 'handled' or 'worked on' includes every kind of incidental operation preparatory to putting goods into the stream of commerce."

[4] In short whenever as a practical matter the local transportation of goods is a step in putting a product of that state into interstate commerce, then as a legal matter, that step, however slight it may be, becomes a part of the "production of goods", whether as stated by plaintiff the step by which this is accomplished is by a hand truck, a traveling crane, a locomotive moving cars wholly within a plant, or a truck traveling over public thoroughfares.

This is seemingly in accord with the other decisions.

In Rockton & Rion Railroad Co. v. Walling, 4 Cir., 146 F.2d 111 the employees of a small railroad engaged in transporting rough stone from a quarry to processing plants in the same state from which finished stone was subsequently shipped interstate, were held to be "engaged * * * in the production of goods for commerce."

In Mid-continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, the court held that employees transporting crude oil from wells to a refinery within the same state, whence refined products moved in interstate commerce, were engaged in the production of goods for commerce.

In Walling v. Comet Carriers, D.C., 57 F.Supp. 1018 defendant's truck drivers were engaged in transporting materials and cut goods for ladies' coats and suits from the jobbers and manufacturers to the contractors who manufactured the materials into garments. The semi-finished articles were carried back to the jobbers and manu-

facturers who, after further processing, shipped them out of state. The court held that the truck drivers were engaged in the production of goods for interstate commerce.

In Walling v. Villaume Box & Lumber Co., D.C., 58 F.Supp. 150, the employees were engaged in transporting wooden boxes from the plant of their employer, a box manufacturer, to the plants of local customers who used them as containers to package their own products for shipment in interstate, and were held to be covered by the act.

In Dallum v. Farmers Co-operative, D.C., 46 F.Supp. 785, the drivers were engaged in the transporting butter from various creameries to defendant's distribution plant located in the same state where the butter was cut, graded, and packaged preparatory to shipment in interstate commerce. It was held that these employees were subject to Section 7 of the act.

■ In view of the compelling logic of the cases cited above, holding that the transportation of goods under the circumstances presented in this case constitutes the production of the goods themselves, defendant cannot avail itself of the exemption contained in Section 15(a)(1) since that exemption by its own terms applies only to the transportation of "goods not produced by such common carrier."

■■ Other contentions raised by defendant are also without merit, plaintiff having overcome the main objection. Section 13(a)(2) of the act exempts employees in service establishments. We believe that it is generally accepted that Section 13(a)(2) applies to such types of service establishments as barber shops, beauty shops, shoe shine parlors, tailors, laundries, garages and the like. Sun Publishing Co. v. Walling, 6 Cir., 140 F.2d 445; Fleming v. Arsenal Building Corp., 2 Cir., 125 F.2d 278; Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567; Bracey v. Luray, 4 Cir., 138 F.2d 8; Guess v. Montague, 4 Cir., 140 F.2d 500; Collins v. Kidd Dairy & Ice Co., 5 Cir., 132 F.2d 79; Schmidt v. Peoples Telephone Union of Marysville, 8 Cir., 138 F.2d 13; Reynolds v. Salt River Valley Users Ass'n, 9 Cir., 143 F.2d 863; New Mexico Power & Light Co. v. Engel, 10 Cir., 145 F.2d 636; A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807; Walling v. Roland Electrical Co., 4 Cir., 146 F.2d 745.

■ Nor does Section 13(b)(1) exempt these drivers from the act since one but one percent of their operations are in interstate commerce. Anuchick v. Transamerican Freight Lines, D.C., 46 F.Supp. 861; Walling v. Mutual Wholesale Food & Supply Co., 8 Cir., 141 F.2d 331.

Another point that would give the court pause were it not for recent decisions lies in the fact that the truck drivers have a contract calling for a 48 hour week and overtime after that. This court in the case of Williams v. General Mills, D.C., 39 F.Supp. 849 where the company shortly before the effective date of the Fair Labor Standards Act made a contract with some night watchmen reducing their pay per hour so that the employees were earning the same money after the effective date of the act as they did before, held that this was a subterfuge and a circumvention; a paper transaction. We were reversed by the Circuit Court of Appeals in General Mills, Inc. v. Williams, 6 Cir., 132 F.2d 367, 144 A.L.R. 1371—that court holding that there was no evidence that this was a "paper transaction" and the contract called for more than the minimum pay set by the act. But the Supreme Court of the United States in a number of recent decisions has similarly brushed aside contractual arrangements between employers and employees when it found that compliance with those agreements did not meet the standards imposed by this Act. See Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11; Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of America, 65 S.Ct. 1063; Walling v. Youngerman-Reynolds Hardwood Co., 65 S.Ct. 1242, 1243; Walling v. Harnischfeger Corp., 65 S.Ct. 1246. In the Jewell Ridge case, supra, the court held that where coal miners had entered into a contract with the company excluding portal to portal pay and which contract called for compensation that was also above the minimum requirements of the act, such a contract was contrary to public policy and the miners could recover for portal to portal pay under the act.

■ In view of that decision and the War Labor Board having specifically stated that they would not attempt to infringe upon the territory or jurisdiction of the plaintiff administrator, we can find no valid reason why we should not hold that this contract must give way to the public policy as expressed in the Fair Labor Standards

Act as fortified by Jewell Ridge decision and hold that such contract and directive is of no force and effect when they conflict with the law.

Finally, defendant argues that "in view of the exemption of truck drivers employees engaged in transportation operations across state lines" the act is unconstitutional since "it would impose upon defendant higher labor standards than those imposed upon competitors whose operations crossed state lines". Even aside from the fact that the Fifth Amendment contains no equal protection clause as in the case of the Fourteenth Amendment, it appears that the classification of drivers affected by Congress in this statute is reasonable and not discriminatory. The two classes are quite distinct and different considerations enter into the regulations of employees essentially engaged in production than govern fixing the hours of work of long haul drivers. See Sun Publishing Co. v. Walling, 6 Cir., 140 F.2d 445.

We therefore hold for plaintiff on all issues.