**WALLING, Adm'r of Wage and Hour Div., U. S. Dept. of Labor, v. MORRIS.**

**No. 10194.**

Circuit Court of Appeals, Sixth Circuit.

May 29, 1946.

Helen Grundstein, of Washington, D. C. (William S. Tyson, Bessie Margolin, Morton Liftin, and Helen Grundstein, all of Washington, D. C., and Charles A. Reynard, of Cleveland, Ohio, on the brief), for appellant.

George S. Dixon, of Detroit, Mich. (Matheson, Dixon & Brady and George S. Dixon, all of Detroit, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Administrator ot the Wage and Hour Division, United States Department of Labor, appeals from the judgment of the District Court, dismissing the complaint in an action brought by him under § 17 of the Fair Labor Standards Act to enjoin the appellee from violation of §§ 15(a) (1) and 15(a) (2) of the Act [§§ 217, 215(a) (1), 215(a) (2), Title 29 U.S.C.A.].

The stipulated facts are briefly as follows: The appellee, a common carrier by motor vehicle, is the sole owner and operator of J. F. Morris Cartage Company in Ecorse, Michigan, doing business in and about Detroit, Michigan. He employs approximately 40 truck drivers, 14 mechanics, painters, washers, and repair men in the garage, 3 dispatchers and 3 general office workers. His operations are centralized at his main garage and yard in Ecorse, Michigan, which is used as a dispatch office, general maintenance and repair garage and storage space for equipment when not in active use. Although he is engaged in a general cartage business and is prepared to render such service to the general shipping public, approximately 97% of his business consists of the interplant transportation of unfinished steel in the course of its manufacture and the transportation of fin-

ished steel from the mills where it is produced to the plants of manufacturers in Detroit. This involves the transportation of steel from industrial establishments in Detroit to the mills of the Great Lakes Steel Corporation and the Michigan Steel Corporation at Ecorse, Michigan, and the transportation of steel from these mills to the plants of various Detroit automobile and parts manufacturers, as well as the hauling of unfinished steel between plants of the Great Lakes Steel Corporation or the Michigan Steel Corporation or the interplant hauling between the two mills. The steel transported is principally bumper stock, fender stock and other types of steel commonly used in the production of automobiles, trucks, trailers, machinery, and other goods, a substantial portion of which is sold and shipped in interstate commerce.

Approximately three percent of appellee's business consists of miscellaneous local cartage of a pickup and delivery character, which involves the handling of goods in transit to and from points outside the State of Michigan. Of appellee's total operations in 1941 (the calendar year preceding the filing of the complaint), 96.35 percent (19,062 trips of a total of 19,786 trips) represented interplant transportation. The remaining 3.65 percent were pickup trips, involving interstate transportation. In the average workweek throughout the entire year 1941, 75.6 percent of the drivers were exclusively engaged in interplant trips. The remaining 24.4 percent of the drivers in the average workweek during that year made one or more pickup or boatdock trips, or both. Two employees were exclusively engaged in interplant hauling during the full period of their employment during the year 1941. The "average employee" was exclusively engaged in interplant transportation during 75.6 percent of the workweek in 1941.

Each of the three of defendant's office employees is employed on a weekly salary basis and is compensated at a rate in excess of that required to be paid by § 6 of the Act, 29 U.S.C.A. § 206. None of these three office employees has ever worked in excess of the maximum number of hours described in § 7 of the Act, 29 U.S.C.A. § 207, in any workweek.

The superintendent of maintenance, Herbert E. Smith, is paid a straight weekly wage of $60 regardless of number of hours worked. During substantially all of the workweeks since October 24, 1938, the effective date of the Act, he has been employed for a number of hours in excess of the number provided in § 7 of the Act without receiving compensation in excess of his regular weekly salary. In the normal course of his employment he has full authority over all mechanics and laborers with power to hire or discharge such employees and to make determinative representations concerning their employment. He works the same schedule of hours as the other mechanics and laborers, and devotes approximately 25% of his time in the performance of routine physical tasks of the same general character as that of the employees working under his direction and supervision.

The other employees of the appellee are employed on the basis of a fixed hourly rate of pay and are paid no additional compensation for hours worked in excess of 40 hours per week, except in the case of truck drivers, who, pursuant to the provisions of their collective bargaining agreement with appellee, receive time and one-half their regular rate of pay for all hours worked in excess of 54 in any workweek. This collective bargaining agreement is a Standard Union contract covering all union drivers engaged in general cartage within the Detroit Metropolitan Area, whether employed in purely intrastate operations or in interstate operations.

The appellee denied that his employees were engaged in the production of goods for commerce within the meaning of § 3(j) of the Act; denied violation of the provisions of the Act; and claimed the exemptions provided by §§ 13(a) (1) and 13(b) (1) of the Act. See §§ 203(j), 213(a) (1), and 213(b) (1), Title 29 U.S.C.A. The District Court held that neither the appellee nor his employees were engaged "in the production of goods for commerce" within the meaning of the Fair Labor Standards Act, and that, in any event, the dispatchers and superintendent of maintenance were employed in a bona fide executive or administrative capacity and were exempt under §

13(a) (1) of the Act, and that the truck drivers and garage employees were employees with respect to whom the Interstate Commerce Commission had power to establish qualifications and maximum hours of service pursuant to the provisions of § 204 of the Motor Carrier Act of 1935, 49 U.S.C.A. § 304, and were exempt under § 13 (b) (1) of the Act. Other defenses raised by the answer were not ruled on by the District Court and are not urged by the appellee in this appeal.

The District Judge, in his ruling of September 26, 1945, did not have before him the decision of this Court in Griffin Cartage Company v. Walling, Administrator, 6 Cir., 153 F.2d 587, affirming the judgment of the District Court and approving the District Court's opinion as reported in 62 F.Supp. 396, 398. That decision is decisive upon the first issue involved herein, namely, whether or not the employees of the defendant are engaged in the "production of goods for commerce" within the meaning of § 3(j) of the Fair Labor Standards Act. Upon facts essentially similar to those present in this case it was held that the employees were so engaged. The question is sufficiently discussed in the District Court's opinion to make it unnecessary to repeat it here. See also Armour & Company v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; The Roland Electrical Company v. Walling, Administrator, 66 S. Ct. 413; West Kentucky Coal Company v. Walling, Administrator, 6 Cir., 153 F.2d 582; Mid-Continent Pipe Line Company v. Hargrave, 10 Cir., 129 F.2d 655; Rockton & Rion R. R. Company v. Walling, Administrator, 4 Cir., 146 F.2d 111; Walling, Administrator v. Comet Carriers, 2 Cir., 151 F.2d 107.

§ 13(b) (1) of the Fair Labor Standards Act provides that the provisions of § 7 of the Act dealing with maximum hours and overtime compensation shall not apply to "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of § 204 of the Motor Carrier Act, 1935." § 204 of the Motor Carrier Act, Title 49 U.S.C.A. § 304 was construed by the Supreme Court in United States v. American Truck Associations, 310 U.S. 534, 60 S.Ct. 1059, 1069, 84 L.Ed. 1345, as being "limited to those employees whose activities affect the safety of operation." In Southland Gasoline Company v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244, the Supreme Court construed § 13(b) (1) of the Fair Labor Standards Act and held that the word "power" therein meant the existence of the power and not its actual exercise, and that such employees as were subject to regulation under § 204 of the Motor Carrier Act of 1935 were exempt from the provisions of the Fair Labor Standards Act, even though the Interstate Commerce Commission had not actually exercised such power. The jurisdiction of the Commission and the corresponding exemption under the Act extends to truck drivers and to such mechanics who actually perform inspection and repair work on the truck but not to other employees such as painters, washers, and dispatchers. United States v. American Trucking Associations, supra; Keeling v. Huber & Huber Motor Express, D.C., 57 F.Supp. 617, and cases therein referred to.

Where an employee of a motor carrier devotes part of his time to work in interstate commerce affecting the safety of operation and devotes the remainder of his time to work which is not exempt from the provisions of the Fair Labor Standards Act, the question arises whether he has devoted a sufficient part of his time to the work which is exempt to bring him within the exemption provision of the Act. The Administrator of the Wage and Hour Division takes the position that the exemption is applicable to a truck driver only if he spends the greater part of his time during any workweek on exempt activities. On the other hand, some Courts have adopted the rule that the exemption is applicable to any truck driver who devotes a substantial part of his time in any workweek to the driving of trucks in interstate commerce, while other Courts have held that the exemption is applicable to any truck driver who performs any duties during the workweek which substantially affect the safety of operation, although the amount of such duties

is comparatively small. Three cases involving these different views are now pending before the Supreme Court. See Walling v. Comet Carriers, 2 Cir., 151 F.2d 107; Levinson v. Spector Motor Service, 389 Ill. 466, 59 N.E.2d 817; Ispass v. Pyramid Motor Freight Corporation, 2 Cir., 152 F.2d 619. This Court also has had the same question before it and has adopted the rule that a truck driver engaged in driving trucks both in interstate commerce and in intrastate commerce must devote a substantial part of his time to the driving of trucks in interstate commerce in order to come within the exemption provision. Fletcher v. Grinnell Bros., 6 Cir., 150 F. 2d 337, 340; West Kentucky Coal Company v. Walling, supra (C.C.A. 6th). At the present time the question is accordingly not an open one in this Circuit. However, the rule still leaves open the question of what constitutes a substantial part of the time of the employee in question. It appears unnecessary to attempt to answer that question definitely in this case, as the stipulated facts fail to show more than a very small proportion of time devoted to interstate transportation. The burden is on the employer to bring himself within the exemption. Fletcher v. Grinnell Bros., supra. The appellee has failed to meet that burden in this case. West Kentucky Coal Company v. Walling, supra.

§ 13(a) (1) of the Act exempts from the wage and hour provisions "any employee employed in a bona fide executive (or) administrative * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator)." Pursuant to this authority the Administrator has issued regulations defining and delimiting such terms. Both the regulation defining "Executive" (§ 541-1) and the one defining "Administrative" (§ 541-2) require the existence of certain facts—in the conjunctive rather than the disjunctive. This includes for the "executive" that he be "compensated for his services on a salary basis at not less than $30.00 per week," and that his "hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction." It includes for one employed in an "administrative capacity" that he be "compensated for his services on a salary or fee basis at a rate of not less than $200 per month," and that his work be non-manual in nature and require the exercise of discretion or independent judgment. The validity and binding effect of these regulations are well established. Sun Publishing Company v. Walling, 6 Cir., 140 F.2d 445 certiorari denied 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564; Walling v. Yeakley, 10 Cir., 140 F.2d 830; Fanelli v. United States Gypsum Company, 2 Cir., 141 F.2d 216. It is also well settled that in order to bring an employee within the classification the employer must show that all of the enumerated qualifications exist. Schmidt v. Emigrant Industrial Sav. Bank, 2 Cir., 148 F.2d 294; Smith v. Porter, 8 Cir., 143 F.2d 292; Lawley & Son Corporation v. South, 1 Cir., 140 F.2d 439, 151 A.L.R. 1081. The stipulated facts show that the dispatchers are not employed on a salary basis, one of the essential requirements for both the executive and one employed in an administrative capacity. See Benedict v. United States, 176 U.S. 357, 20 S.Ct. 458, 44 L.Ed. 503. They also show that the superintendent of maintenance works the same schedule of hours as the other mechanics and devotes approximately 25 percent of his time to work of the same general character as that of employees working under his direction and supervision. Accordingly, he does not qualify as an executive. The physical and manual character of much of his work prevents his classification as one employed in an administrative capacity. See Walling, Administrator v. General Industries Co., 6 Cir., 155 F.2d 711.

The judgment of the District Court is reversed and the case remanded for further proceedings consistent with the views expressed herein.