Albert S. CRAIG et al., Appellants,

v.

FAR WEST ENGINEERING COMPANY, Inc., a corporation, Appellee.

FAR WEST ENGINEERING COMPANY, Inc., a corporation, Appellant,

v.

Albert S. CRAIG et al., Appellees.

No. 16040.

United States Court of Appeals
Ninth Circuit.

April 7, 1959.

---

William Kraker, Beverly Hills, Cal., for appellants-cross appellees.

Julius A. Leetham, Los Angeles, Cal., for appellee-cross appellant.

Stuart Rothman, Sol., Bessie Margolin, Asst. Sol., Sylvia S. Ellison, Beate Bloch, Attys., U. S. Dept. of Labor, Washington, D. C., Kenneth C. Robertson, Regional Atty., U. S. Dept. of Labor, San Francisco, Cal., for amicus curiae.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

These cross-appeals involve ten consolidated similar causes of action filed in seven complaints by onetime employees of appellee Far West Engineering Company, a corporation (hereinafter sometimes referred to as Far West), to recover alleged unpaid overtime compensation; an equal amount in liquidated damages; and reasonable attorneys' fees, pursuant to the Fair Labor Standards Act of 1938,[1] as amended.

Jurisdiction below rests on 28 U.S.C. § 1337 and § 16(b) of the Act.[2] Timely and proper cross-appeals have been taken here. 28 U.S.C. § 1291.

Recovery was had in the district court by the ten plaintiffs below (hereinafter sometimes called the employees) in the following sums, respectively:

| C.A. No. | Name | Compensation | Interest | Atty. Fees |
| --- | --- | --- | --- | --- |
| 1314–57 | Albert S. Craig | $253.31 | $ 35.55 | $ 50.66 |
| 1314–57 | Joseph P. Soldis | 96.90 | 6.44 | 19.38 |
| 1314–57 | Warren L. Gaiennie | 123.60 | 8.05 | 24.72 |
| 1314–57 | Lynn E. Morrison | 415.57 | 35.38 | 83.11 |
| 1315–57 | Carl L. Clement | 586.09 | 80.67 | 117.22 |
| 1316–57 | Sven Ingildsen | 2,405.66 | 180.09 | 481.13 |
| 1317–57 | Philip Gindes | 427.87 | 58.95 | 85.57 |
| 1344–57 | George D. Massar | 165.54 | 21.31 | 33.10 |
| 1391–57 | Frederick J. Pyle | 542.37 | 65.38 | 108.47 |
| 1400–57 | James M. D. Linick | 185.62 | 25.33 | 37.12 |

These judgments carried costs, but no equal sums for liquidated damages were allowed. The district court found that there was no dispute as to the employment by Far West of the ten plaintiffs, nor as to their rate of pay. Employment records indicated they were paid at varying hourly rates.

Far West contends that the employees were exempt for two reasons: (Point 1) the work they did was "engineering design"—not in interstate commerce, and (Point 2) the employees were supervisory or professional personnel. Far West

has charged error in those two particulars, and on two further procedural grounds: (Point 3) six plaintiffs having failed to appear at the trial are not entitled to recover, and (Point 4) the district court should have dismissed the complaints of two of the said six plaintiffs for wilful failure to comply with the discovery rules of procedure in the district court.

The Secretary of Labor has filed an amicus curiae brief, devoted to the first two alleged errors hereinabove numbered, urging there was no error.

---

1. 52 Stat. 1060 (1938), 29 U.S.C.A. § 201 et seq.

2. 52 Stat. 1069 (1938), 29 U.S.C.A. § 216 (b). See n. 13 infra, for text of this section.

Far West, an engineering firm, was located in Los Angeles, California. It engineered and designed air test equipment for Hughes Aircraft Company and other companies. Employees Craig, Pyle, Ingildsen and Clement testified in the district court that they worked all or a part of their time during the period in question as members of a "Tucson group" which worked almost exclusively on "designs" for the Tucson, Arizona plant of the Hughes Aircraft Company. Ninety-five per cent of the work done in Los Angeles during a part of the time here involved was for the Hughes Tucson plant. Hughes gave Far West the basic design; Far West prepared the engineering drawings and delivered them to Hughes. The employees testifying described this as "very elementary or simple draftsmen's work." Far West's president described it as work only a professional engineer could do. Far West says that it paid these employees by the hour only because that was necessary because of its contract with Hughes; but that despite this, the work done by these employees was "professional," and hence exempt from the coverage of the Act.

I. Were the employees "engaged in the production of goods for commerce" within the meaning of the Fair Labor Standards Act?

█ We think that the Supreme Court has decided this question for us. In Borden Co. v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 1225, 89 L.Ed. 1865, the Court said production of goods "is not simply the manual, physical labor involved in changing the form or utility of a tangible article. * * * He who conceives or directs a productive activity is as essential to that activity as the one who physically performs it." Id., 325 U.S. at page 683, 65 S.Ct. at page 1225. And in Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 79 S.Ct. 260, 263, 3 L.Ed.2d 243, the respondent was an architectural and consulting engineering firm which was hired to design pub-

lic, industrial and residential projects and to prepare plans and specifications necessary for this construction. It had offices in Norfolk, Virginia and Washington, D. C., but many of its projects and clients were located outside Virginia and the District of Columbia. Much of its work related to government contracts and these required respondent firm to produce plans, specifications, drawings and designs which were sent out of the state to prospective builders.

The "architects and engineers" were classified as "professional employees," and hence exempted by the provisions of § 13(a) (1) of the Act.[3] The "draftsmen" were grouped with the "fieldman, clerks and stenographers," as nonprofessional employees and held subject to the Act. Mr. Chief Justice Warren then says:

"The question at issue is whether these non-professional employees are 'engaged in commerce' as that term is used in §§ 6 and 7 of the Act, 29 U.S.C. §§ 206, 207, 29 U.S.C.A. §§ 206, 207. To determine the answer to this question, we focus on the activities of the employees and not on the business of the employer. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L. Ed. 1196. We start with the premise that Congress, by excluding from the Act's coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce. Kirschbaum Co. v. Walling, supra; McLeod v. Threlkeld, 319 U. S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. However, within the tests of coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional direction. * *

3. 52 Stat. 1067 (1938), 29 U.S.C.A. § 213 (a) (1).

The test is 'whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity.' Mitchell v. C. W. Vollmer & Co., supra, 349 U.S. at page 429, 75 S.Ct. at page 862. Coverage in the instant case must be determined by that test for, as the parties stipulated below, the draftsmen, fieldmen, clerks and stenographers all worked intimately with the plans and specifications prepared by respondent for the repair and construction of various interstate instrumentalities and facilities including air bases, roads, turnpikes, bus terminals, and radio and television installations. *In our view, such work is directly and vitally related to the functioning of these facilities because, without the preparation of plans for guidance, the construction could not be effected and the facilities could not function as planned.* In our modern, technologically oriented society, the elements which combine to produce a final product are diffuse and variegated. Deciding whether any one element is so directly related to the end product as to be considered vital is sometimes a difficult problem. But plans, drawings and specifications have taken on greater importance as the complexities of design and bidding have increased. Under the circumstances present here, we have no hesitancy in concluding that the preparation of the plans and specifications was directly related to the end products and that the employees whose activities were intimately related to such preparation were 'engaged in commerce.' "

Id., 358 U.S. at pages 211–212, 79 S.Ct. at page 263. [Emphasis added.] Cf.

also, Mitchell v. Brown, 8 Cir., 1955, 224 F.2d 359, certiorari denied 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773; Ritch v. Puget Sound Bridge & Dredging Co., 9 Cir., 1946, 156 F.2d 334; Laudadio v. White Const. Co., 2 Cir., 1947, 163 F.2d 383.

Here, of course, there exists not only the general rule for this type of endeavor as delineated by the Supreme Court, supra, but the further fact that some of the employees, if not all, worked almost exclusively on drawings that were shipped to Tucson, Arizona, outside the state of California. Compare, Western Union Tel. Co. v. Lenroot, 1945, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414. We conclude that the employees "were engaged in the production of goods for commerce" within the provisions of the Fair Labor Standards Act:

II. Were the employees exempt as professional or executive employees, within the provisions of the Act and the regulations promulgated thereunder?

Title 29 U.S.C.A. § 213(a) (1) provides:

"The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity * * * (as such terms are defined and delimited by regulations of the Administrator) * * *."

Section 207, referred to above provides for an overtime rate of payment for more than forty hours per workweek.[4] It is, of course, on the basis of this section of the law that the employees here claim the overtime pay.

Section 541.1 of the regulations, issued by the Administrator pursuant to the above statutory authority, defines "bona

4. Section 207 provides:
"(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

fide executive * * * capacity,[5] while § 541.3 of the regulations defines "bona fide * * * professional capacity." [6]

5. 29 C.F.R. § 541.1, Cum.Supp.1958:

"*Executive.* The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the act shall mean any employee:

"(a) Whose primary duty consist of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; **and**

"(e) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided,* That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; *and*

"(f) Who is compensated for his services on a salary basis at a rate of not less than $55 per week (or $30 per week if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities:

"*Provided,* That an employee who is compensated on a salary basis at a rate of not less than $100 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section."

6. 29 C.F.R. § 541.3, Cum.Supp.1958:

"*Professional.* The term 'employee employed in a bona fide * * * professional * * * capacity' in section 13(a) (1) of the act shall mean any employee:

"(a) Whose primary duty consists of the performance of work:

The regulations further provide in great detail in subpart B, 29 C.F.R. § 541.99 et seq., the necessary interpretation to

"(1) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes, or

"(2) Original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee; and

"b) Whose work requires the consistent exercise of discretion and judgment in its performance; and

"(c) Whose work is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

"(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $75 per week (or $200 per month if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities: *Provided,* That this paragraph shall not apply in the case of an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof:

"*Provided,* That an employee who is compensated on a salary or fee basis at a rate of not less than $100 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the performance of work either requiring knowledge of an advanced type in a field of science or learning, which includes work requiring the consistent exercise of discretion and judgment, or requiring invention, imagination, or talent in a recognized field of artistic endeavor, shall be deemed to meet all of the requirements of this section."

be given the standards set up in the above noted regulations.

██ This is not the first case where the courts have been called upon to consider and interpret the foregoing statute and regulations.

"The precise question here is not whether the appellants were employed in an executive [or professional] capacity within the meaning the phrase may have in common usage, but whether appellants were so employed within the definition as promulgated by the administrator under authority of law." Smith v. Porter, 8 Cir., 1944, 143 F.2d 292, at page 295.

That the regulations issued by the Administrator are generally valid and binding, as a reasonable exercise of delegated authority, is well established. Sun Publishing Co. v. Walling, 6 Cir., 1944, 140 F.2d 445, 449, certiorari denied 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564. See also Fanelli v. United States Gypsum Co., 2 Cir., 1944, 141 F.2d 216; Walling v. Yeakley, 10 Cir., 1944, 140 F.2d 830, 832. It is also well settled that the employer has the burden of proving the existence of each of the conditions or standards set up in the regulations if he claims that an employee is exempted under the Act. Walling v. General Industries Co., 1947, 330 U.S. 545, 547–548, 67 S.Ct. 883, 91 L.Ed. 1088.

██ In the instant case it is important to recognize that it is the capacity in which the employee works, under the regulations, which controls his status of exemptibility or nonexemptibility, and not his capabilities or experience or training for some other type of work. Had Einstein been employed in a nonprofessional capacity to perform nonprofessional services he would be entitled to time-and-a-half for overtime over forty hours per workweek.

██ Appellant Far West urges that "the various plaintiffs fit clearly within the purview of one or the other of the regulations quoted." It does not attempt to tell us which of the employees fall within the category of executives and/or which of them are to be considered in the professional category. Nor does it make any attempt to show why they would fit into either category, except the observation that there is no reason that they could not fit into one or the other just because they are paid on an hourly basis.

The government in its amicus brief simply says that here the trial court found that each employee was an "hourly employee" and hence "plainly * * is not 'compensated on a salary or fee basis,'" as the regulations require.[7] Therefore, it argues Far West has not sustained its burden of bringing the employees within the exemptions provided for in the Act.

Far West would explain and justify the hourly wages paid the employees on two grounds: (a) because its contracts were on an hourly basis and it was necessary to pay the employees this way; and (b) because Far West's testimony was "to the effect" (whatever that may mean) that "a guarantee was given to the individual professional and/or supervisory personnel;" and that the four testifying employees' testimony was not in accord with Far West's testimony, but that at least one employee's testimony indicated uncertainty in denying the guarantee. Far West urges that "it is probably fair to assume that there was a guarantee." If there was in fact a guarantee, § 7(e) of the Act, 29 U.S.C.A. § 207(e), would have the effect of providing a defense for Far West in this suit.[8]

7. Amicus Curiae Brief, p. 15.

8. It provides:
"No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of forty hours if such employee is employed pursuant to a bona fide individual contract, or pursuant to an agreement made as a result of collective bargaining by representatives of employees, if the duties of such employee necessitate irregular hours of work, and the contract or agreement (1) specifies a regular rate of pay of not less than the minimum hourly rate provided in sec-

We know of no rule of law that permits this Court to assume facts in issue, when the testimony below is conflicting and has been decided adversely to such assumption by the trier of fact who was in a position to balance the value of the testimony on the question. There was no finding below of such guarantee. We must, and do, decline to assume there was such a guarantee.

Turning to the fact which the lower court felt was completely dispositive of any attempt on the part of Far West to show that these employees were in the exempted categories, we must consider next whether the lower court's classification of these employees as "hourly employees" does in fact preclude them, as a matter of law, from coming within the exempted categories provided for in § 13(a) (1) of the Act, as "defined and delimited" in the regulations noted above.

As we have seen, the regulations specifically provide that the employee must be "compensated on a salary or fee basis." 29 C.F.R. § 541.3(e). Furthermore, the detailed explanation and interpretation of these regulations found in 29 C.F.R. § 541.118 explains just what a "salary basis" means:

> "*Salary basis.* (a) An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, *a predetermined* amount constituting all or part of his compensation, which amount is not subject to reduction

because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work *without regard to the number of days or hours worked.* This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work. [Emphasis added.]

> \* \* \* \* \* \*

> "(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

> \* \* \* \* \* \*

> "(b) *Minimum guarantee plus extras.* It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. \* \* \* \*"

29 C.F.R. § 541.118, Cum.Supp.1958. Section 541.117 explains that "the shortest period of payment which will meet the requirement of payment 'on a salary basis' is a week." [9]

Was the district court correct in giving these regulations the force of law, thus

---

tion 206(a) and compensation at not less than one and one-half times such rate for all hours worked in excess of forty in any workweek, and (2) provides a weekly guaranty of pay for not more than sixty hours based on the rates so specified."

9. "*Amount of salary required.* (a) Compensation on a salary basis at a rate of not less than $55 per week is required for exemption as an executive. The $55 a week may be translated into equivalent periods longer than one week. The requirement will be met if the employee

is compensated biweekly on a salary basis of $110, semi-monthly on a salary basis of $119.17 or monthly on a salary basis of $238.33. However, the shortest period of payment which will meet the requirement of payment 'on a salary basis' is a week." 29 C.F.R. § 541.117, Cum.Supp. 1958.

Section 541.312 which covers professional employees refers us back to § 541.118 for the interpretation of the meaning of "salary basis" in that section, so that both categories of employees are governed by the same rules.

precluding these employees from coming within the exempted status? The Supreme Court has told us in considering an analogous case that:

"It is enough that the Administrator has acted within the statutory bounds of his authority, and that his choice among possible alternative standards adapted to the statutory end is one which a rational person could have made." Federal Security Administrator v. Quaker Oats Co., 1943, 318 U.S. 218, 233, 63 S.Ct. 589, 598, 87 L.Ed. 724.

Although at first blush it does not seem to this Court to be logical, other courts have determined that to qualify as an exempted employee the worker must be paid on a "salary basis." Walling v. Morris, 6 Cir., 1946, 155 F.2d 832; Helliwell v. Haberman, 2 Cir., 1944, 140 F.2d 833; Walling v. Yeakley, supra. Cf. also, McReynolds v. Pocahontas Corp., 4 Cir., 1951, 192 F.2d 301; Delano v. Armstrong Rubber Co., 1950, 136 Conn. 663, 73 A.2d 828, certiorari denied 340 U.S. 840, 71 S.Ct. 28, 95 L.Ed. 616. And see, generally, Annotation, 40 A.L.R.2d 332 (1955), particularly at pages 347–349.

Apparently the question has never been passed on by this Court, although it has been considered by a district court in this circuit, wherein it was held that a salary basis of compensation was "a primary essential" in order to constitute an exempt employee. Gorchakoff v. California Shipbuilding Corp., D.C.S.D.Cal. 1945, 63 F.Supp. 309, 311. The effect of this rule in its practical application could have inconsistent results. Thus hypothetical Employee A who meets all the standards set out in the regulations, *except* that he is paid on an hourly basis rather than a "salary basis," is not with-

in the exempted class. But Employee B who meets all of the requirements of the regulations, including being on a "salary basis," is exempted by § 13(a) (1) of the Act. Yet both men may be performing the same duties in return for the same amount of compensation with the same firm.

■ However, we agree with the other circuits that this particular regulation pertaining to "salary basis" compensation must be taken to mean precisely what it says, and that it is a reasonable exercise of authority delegated to the Administrator. We say this because upon examination of the history behind the promulgation of these regulations, it becomes clear that the rationale underlying them is sound and apparently the one practical method of "defining and delimiting" the rather vague and ambiguous terms used in the statute. Employers, even more than employees, desire some certainty in the law. The report and recommendations of the presiding officer who conducted hearings on proposed amendments to the regulations in 1940 indicates that the employers participating in the hearings were nearly unanimous in approving the salary test because "a salary qualification in the definition of the term 'executive' is a valuable and easily applied index to the 'bona fide' character of the employment for which exemption is claimed and which must be of a 'bona fide' executive character by the terms of the statute itself." [10] Furthermore, the report expressly points out that employees on an hourly basis cannot be considered in an executive capacity, and explains why.[11] In the section of the report on professional personnel, it is stated that "the same basic reasons which make the

---

10. Report and Recommendations of the Presiding Officer on Proposed Amendments regarding the definition of the terms "Executive, Administrative, Professional * * * Outside Salesman." 2 CCH Labor Law Reporter ¶31,302.29 at page 31,317 (3rd ed. 1940).

11. "[T]he requirement is not fulfilled by the earnings of a person who is paid on

an hourly basis. The shortest pay period which can properly be understood to be appropriate for a person employed in an executive capacity is obviously a weekly pay period and hourly paid employees should not be entitled to the exemption. The executive status in and of itself connotes at least the tenure implied by a weekly pay period as the very minimum." Ibid., ¶ 31,302.30 at page 31,319.

use of a salary test desirable in connection with the definition of 'executive' and 'administrative' are applicable here. The salary paid the employee is the best single test of the employer's good faith in characterizing the employment. * * * " [12]

Accordingly we conclude that the district court was correct in ruling that since these employees were paid on an hourly basis they could not, as a matter of law, be within the exempted categories, Far West's contentions notwithstanding. The regulations of the Administrator are worded in the conjunctive, therefore, this failure to comply with one of the standards provided is dispositive of the question, and it is unnecessary to consider the other requirements. Walling v. Morris, supra. There is a finding as to each of these employees that they were paid on an hourly basis, and we are bound by this, there being no evidence to the contrary. In fact, as we have pointed out above, Far West admits that this was the case in its brief.

III. The Procedural Errors Alleged By Far West

In light of the discussion of the applicability of the Act, hereinabove, and our conclusions as to the status of the plaintiff employees, we do not deem it necessary to discuss in detail the two procedural points raised by Far West. Point 3 deals with the claim that since certain of the employees were not present at the trial and did not testify there was insufficient evidence to justify any recovery as to them. Point 4 concerns the lower court's refusal to dismiss the cases of two of the employees for failure to comply with certain pretrial discovery procedures.

■■ On the last point, we call attention to the fact that the particular rule under which Far West moved for the dismissals, Fed.R.Civ.P. 37(d), 28 U.S.C., is by its very terms discretionary with the trial court. It says "the court * * * *may* * * * dismiss the action or proceeding." The courts have so interpreted it in cases arising under the rule. Hubbard v. Baltimore & Ohio R. Co., 6 Cir., 1957, 249 F.2d 885; Campbell v. Johnson, D.C.S.D.N.Y.1951, 101 F.Supp. 705. Under the circumstances here, we cannot say that the court abused its discretion in refusing to grant the dismissals.

■ Second, aside from the above point, we believe that both of Far West's contentions as to procedural error are governed by the same factors. It seems to us that the short answer to both these alleged errors is that once it is established that the Act applies to these employees, there is nothing left to establish save the hours worked by these employees. Any other evidence would be completely superfluous to the issues at hand. Evidence of just what the duties of each of the employees were, how many men they supervised, etc., is unnecessary since we have already demonstrated that regardless of their duties, they could not be considered within the exempted class since they were not on a "salary basis." The record of this case indicates that the employees established the hours they worked by introducing photostatic copies of the defendant Far West's payroll records, which the parties had stipulated would be used to determine the employees' claims. Once this was done, the employees had established a prima facie case for recovery of the overtime pay, which could only be rebutted by a showing on the part of Far West that there was some guaranteed salary paid to the men. This they failed to establish, for there is no finding of fact by the trier of fact to this effect. (Far West argues there should be, but as we have pointed out above, the evidence is at best conflicting and requires no affirmative finding of a guarantee.) We must conclude, therefore, that there is evidence in the record to support the judgments in favor of the employees, and that Far West's allegations of procedural error are without merit.

12. Ibid., ¶ 31,302.65 at page 31,333.

#### IV. The Error Alleged by the Plaintiff Employees

 The only error claimed by the employees which we find necessary to comment upon is that an award equal to their overtime wages must mandatorily be included in their recovery as liquidated damages.[13] However, the employees in their own brief recognize that this right to liquidated damages is limited to cases where the employer cannot establish a good faith failure to pay the overtime.[14] There are findings in each of the cases before us, by the trial judge, to the effect that the defendant employer was in good faith when it failed to pay the overtime rates. We believe this finding as to good faith is justified by the record. The trial court was not in error in so ruling.

Inasmuch as we have reached the conclusion in the preceding paragraph that the employees in the instant case are not entitled to recover any "liquidated damages," it is unnecessary to reach their contention that the lower court improperly ordered the release of certain attached funds in excess of the judgments entered. As the employees' brief, itself, indicates [p. 9], the whole basis of their appeal here is the failure of the lower court to award them liquidated damages. Had their argument been sustained by this Court, then we would have been faced with the problem of protecting the interests of the employees by seeing to it that they were able to obtain the additional monies that would then be due them as liquidated damages. As it stands now, however, there is on deposit with the court below a sum in the amount of the judgments (which include interest and attorney's fees), which judgments we have herein affirmed as rendered. Therefore, whatever the propriety or impropriety of the action of the district court in releasing these additional funds makes no difference in the outcome of this case as affirmed.

Furthermore, we do not find it necessary to pass upon the employees' argument that Far West waived its right to appeal by accepting the benefits of the so-called "conditional order to release," for a similar reason. The final result here is the same as though there had been no appeal. Our affirmance of the judgments as rendered makes the issue of any right to appeal moot.

The judgment of the district court is affirmed in all respects, as to each of the consolidated cases before us.

---

13. § 16(b) of the Act, 52 Stat. 1069, 29 U.S.C.A. § 216(b) provides:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages.* * * *" [Emphasis added.]

14. See 61 Stat. 89 (1947), 29 U.S.C.A. § 260 which leaves the award of liquidated damages to the discretion of the trial court where the employer satisfies the court of its good faith failure to pay the overtime or minimum wages.