**RETAIL STORE EMPLOYEES UNION, LOCAL 400 et al., Plaintiff,**

**v.**

**DRUG FAIR–COMMUNITY DRUG CO., Inc., Defendant.**

**Civ. A. No. 2826–64.**

United States District Court
District of Columbia.

Dec. 22, 1969.

Ira M. Lechner, Spelman, Lechner & Wagner, Arlington, Va., for plaintiff.

Earle K. Shawe, William J. Rosenthal, Shawe & Rosenthal, Baltimore, Md., for defendant.

## OPINION

McGARRAGHY, District Judge.

This action was originally brought by the Retail Store Employees Union, Local 400, and fifty-two licensed pharmacists against the pharmacists' employer, Drug Fair-Community Drug Company, Inc., for overtime pay allegedly due under the Fair Labor Standards Act. (Act of June 25, 1938, C. 676, 52 Stat. 1060; 29 U.S. C. § 207; hereinafter "the Act.")

Drug Fair is a large retail drug store chain which operates approximately one hundred nineteen stores in the Metropolitan Washington, D. C. area. At all times material, Drug Fair has received

from its operations gross sales in excess of $1,000,000.00 annually and each of defendant's individual retail drug stores in which each of the plaintiffs is or was employed had annual gross sales receipts in excess of $250,000.00.

This action has been dismissed as to plaintiffs, Retail Store Employees Union and forty-seven of the individual pharmacists.

The remaining five plaintiffs contend that, in violation of the Act, as interpreted by the lawful regulations of the Wage and Hour Administrator, defendant has failed to pay the plaintiffs any overtime compensation (time-and-a-half) for hours worked in excess of forty-four hours during the period September 3, 1963 to September 3, 1964; and for hours in excess of forty-two hours from September 3, 1964 to September 3, 1965; and for the the hours in excess of forty hours from September 3, 1965 to June 30, 1969.

Pursuant to Section 16(b) [1] of the Act, plaintiffs seek the unpaid overtime, an equal amount in liquidated damages, attorneys' fees and costs.

Jurisdiction is conferred on this court by the provisions of 28 U.S.C. § 1337.

Section 13(a) (1) [2] provides that "executive, administrative and professional employees" are exempt from the overtime requirements of Section 7.[3]

Defendant contends that the plaintiffs, as pharmacists, are employed by the defendant in a bona fide "professional" capacity within the meaning of Section 13(a) (1) and the Regulations issued thereunder, and are, therefore, exempt from overtime compensation benefits of the Act.

Defendant also contends that coverage of the plaintiffs under the Act on the basis of their being employees of an "enterprise" engaged in commerce, as defined by Section 3(s) (1)[4] is beyond any power of Congress to regulate commerce.

Defendant also contends that the provisions of Section 13(a) (1) granting authority to the Secretary of Labor or his delegate to establish regulations "defining and delimiting" what is meant by an executive, administrator or professional is an unconstitutional delegation of legislative authority, and further, that such regulations defining a professional employee in terms of his form of compensation are vague, unreasonable and capricious.

The court will consider the above constitutional issues first.

■ Until the 1961 Amendments to the Act, the Fair Labor Standards Act did not apply to employees in retail establishments like Drug Fair. Section 3(s) applied the so-called "enterprise doctrine" to retail establishments. The enterprise doctrine meant that instead of only extending protection to employees individually connected to interstate commerce, the Act now covered all employees of any enterprise engaged in commerce. The court is of the opinion that Drug Fair squarely falls within the scope of Section 3(s) of the Act. Therefore, its employees are covered by the Act.

■ The constitutionality of the enterprise doctrine has been firmly established by the reasoning in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 1941, and by Maryland v. Wirtz, 392 U.S. 183, 188–193, 88 S.Ct. 2017, 2019–2022, 20 L.Ed.2d 1020, 1026–1029, 1967, and needs no further comment here.

It is also well established that the regulations issued by the Wage and Hour Administrator are valid and binding as a reasonable exercise of delegated authority. Craig v. Far West Engineering Company, (9th Cir., 1959), 265 F.2d 251, 257, 72 A.L.R.2d 1143, 1150, cert. den. 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63; Sun Publishing Company v. Walling, (6th Cir., 1944), 140 F.2d 445, 449, cert. den. 322 U.S. 728, 64 S.Ct. 946, 88 L.Ed. 1564.

1. 29 U.S.C. § 216(b)

2. 29 U.S.C. § 213(a) (1)

3. 29 U.S.C. § 207

4. 29 U.S.C. § 203(s)

See also Fanelli v. United States Gypsum Co., (2nd Cir. 1944), 141 F.2d 216, 218, and Walling v. Yeakley, (10th Cir. 1944), 140 F.2d 830, 832.

■ Defendant attacks the Wage and Hour Administrator's Regulation requiring that an "executive, administrative or professional" employee receive a minimum salary before being exempt under the Act as arbitrary and capricious. However, numerous courts have held these regulations to be a reasonable exercise of authority delegated to the Administrator. Walling v. Yeakley, supra; Helliwell v. Haberman, (2nd Cir. 1944), 140 F.2d 833, 834; Craig v. Far West Engineering Company, supra, 265 F.2d pp. 259–260; Tripp v. May (7th Cir. 1951), 189 F.2d 198, 201–202; Wirtz v. Mississippi Publishers Corp. (5th Cir. 1966), 364 F.2d 603, 608; Chepard v. May (D.C.S.D.N.Y. 1947), 71 F.Supp. 389, 391–392.

This court is of the opinion that the Regulation attacked here (29 C.F.R. 541.3) is entirely reasonable and well within the authority delegated to the Administrator, and that the court is bound by it.

As was said in Craig v. Far West Engineering Company, supra, 265 F.2d at p. 259:

* * * We agree with the other circuits that this particular regulation pertaining to "salary basis" compensation must be taken to mean precisely what it says, and that it is a reasonable exercise of authority delegated to the Administrator. We say this because upon examination of the history behind the promulgation of these regulations, it becomes clear that the rationale underlying them is sound and apparently the one practical method of "defining and delimiting" the rather vague and ambiguous terms used in the statute. Employers, even more than employees, desire some certainty

in the law. The report and recommendations of the presiding officer who conducted hearings on proposed amendments to the regulations in 1940 indicates that the employers participating in the hearings—were nearly unanimous in approving the salary test because "a salary qualification in the definition of the term 'executive' is a valuable and easily applied index to the 'bona fide' character of the employment for which exemption is claimed" * * *.5

The court now turns its attention to the central issue in this case. The question presented is very clear, if not its resolution. If the plaintiffs are not within the scope of the exemptions enumerated in Section 13(a) (1), then they are covered by the Act and are entitled to compensation for overtime pay.

Section 13 provides, in pertinent part, that:

* * * the provisions of sections six and seven (relating to minimum hours and overtime pay) shall not apply with respect to any employee employed in a bona fide executive, administrative, or professional capacity * * *.

The Regulations of the Wage and Hour Administrator establish five basic criteria which an employee must meet to be considered an exempt professional employee. The Regulation, at 29 C.F.R. 541.3 provides, in pertinent part:

The term "employee employed in a bona fide * * * professional capacity" in section 13(a) (1) of the Act shall mean an employee:

(a) Whose primary duty consists of the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study * * *

5. See the Report and Recommendations of the Presiding Officer in the matter of the Proposed Amendments to Part 541 of the Regulations with respect to the definition of the terms "executive, administrative, and professional employee." October 10, 1940. CCH Labor Law Reporter, § 31,302, (3rd ed. 1940).

(b) Whose work requires the consistent exercise of discretion and judgment in its performance,

(c) Whose work is predominantly intellectual * * *

(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) * * *

(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $115 per week * * *

■ Plaintiffs have the burden of proof as to all elements of their claim for relief. They must prove that there exists an employee-employer relationship; that there was engagement in activities within the coverage of the Act; that the employer violated the wage requirements; and that a definite amount of compensation is due.

■ But the burden is clearly on the employer to affirmatively show that their employees are within the scope of a particular exemption. Idaho Sheet Metal Works, Inc. v. Wirtz, 1966, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694, 704, rehearing den. 383 U.S. 963, 86 S. Ct. 1219, 16 L.Ed.2d 305; Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 392–394, 80 S.Ct. 453, 456, 4 L.Ed.2d 393, 396, rehearing den. 362 U.S. 945, 80 S.Ct. 803, 4 L.Ed.2d 772; Walling v. General Industries Co., 1947, 330 U.S. 545, 547–548, 67 S.Ct. 883–884, 91 L.Ed. 1088, 1090; Craig v. Far West Engineering Company, supra, 265 F.2d 257.[6]

It is unnecessary to discuss whether plaintiffs comply with all five of the criteria mentioned at 29 C.F.R. 541.3. The parties have stipulated that plaintiffs did comply with the first four criteria. (29 C.F.R. 541.3(a) through (d)). The real matter in dispute in this case is whether plaintiffs are "compensated on a salary basis" under subsection (e).

A Regulation at 29 C.F.R. 541.118 defines, at length, what constitutes a salary:

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if * * * he regularly receives each pay period on a weekly, or less frequent, basis a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked * * * (emphasis added)

■ The courts have accepted these regulations as binding. Therefore, as a matter of law, if an employee is paid a salary in excess of $115.00 a week and he complies with the other criteria at 29 C.F.R. 541.3, he is considered an "executive or professional" and is not entitled to overtime compensation. Craig v. Far West Engineering Co., supra, 265 F.2d p. 260. The court must determine from the facts whether plaintiffs' form of compensation can be construed to be a "salary" or one computed on an hourly basis.

In 1961, just prior to the time the Act applied to retail enterprises, Drug Fair adopted the pay practices in dispute here.

Drug Fair kept its stores open a certain number of hours a week. Over the years in question, most of the stores were open either 93, 99 or 104 hours per week. There are five or six stores open 24 hours a day.

We shall use the 99-hour week for illustration. Typically, this store would be open from 7 a. m. to 10 p. m. six days a week. On Sunday, the store would open at 10 a. m. and close at 7 p. m.

Generally, two pharmacists were employed in each such store. One phar-

---

6. See also CCH, Labor Law Reporter, Wage & Hour Volume 2, § 25,920.611 and § 25,920.675 and cases cited therein.

macist had to be on duty at all times the store was open. Between them, the pharmacists would cover the store. While there is dispute as to whether the pharmacists or Drug Fair set up the working schedule, it is clear that such a schedule did exist for the pharmacists. Generally, pharmacists would work a short week one week and a long week the following week. At the end of a two-week period, each pharmacist would have worked the same number of hours unless one pharmacist worked extra hours in his regular store or as a relief pharmacist in another store. The basic schedule varied among the pharmacists. Some worked 39 hours one week and 60 hours the next. Others had a 45–54 hour schedule.

Normally, it is not difficult to ascertain by what means an employee is compensated—whether salary or hourly rate. However, in the case at bar, it is impossible to completely rely on what the parties call the form of compensation. Drug Fair records refer to a pharmacist's "salary", his "hourly equivalent", and his "hourly rate".

After close scrutiny of the evidence and of the memoranda submitted by counsel, the court is of the opinion that Drug Fair failed to carry its burden of proving that the pharmacists were exempt from the Act as professional employees.

Drug Fair did not pay its pharmacists a salary within the meaning of the Act. Therefore, these employees were not exempt from the minimum wage and hour sections of the Act and are entitled to overtime pay.

Clearly, Drug Fair pharmacists did not receive in "each pay period" a "predetermined amount" of compensation. There were no written contracts of employment specifying the form of compensation. While there were discussions of a "weekly salary" with new pharmacists by Drug Fair recruiters, the figures used appear to have been merely one-half of the basic two-week work schedule. Rather than a predetermined amount, the weekly or biweekly compensation of the

pharmacists was directly dependent on the number of hours worked. The numerous time cards, pay stubs and employee status-change cards which were introduced in evidence clearly show this dependency.

Every pay stub shows a direct correlation between hours worked, rate of pay, and gross pay. One of the plaintiffs', Mr. Henry Gwiazda, pay stub for the week ending January 6, 1964 shows 53.5 hours worked with a gross pay of $195.28. Reference to Mr. Gwiazda's personnel jacket shows an hourly rate of $3.65 per hour. Of course, 53.5 times $3.65 equals $195.28. This computation can be repeated with every pay stub.

Several letters from Drug Fair to individual plaintiffs concerning pay increases were introduced. These letters purport to increase the "weekly salary" to the "equivalent hourly rate" of such-and-such a figure. Considered alone, these letters are ambiguous; considered together with the pay stubs, the time cards, and the status-change forms, they are inaccurate. While Drug Fair may call the form of compensation a salary, the time cards and pay stubs which reflect how the payroll was actually computed each pay period clearly belie this characterization.

Defendant insists that the pharmacists were guaranteed a bi-weekly work schedule of 99 hours. It maintains that each pharmacist was required to work 99 hours during the two-week schedule. This was a condition of his employment. Defendant apparently believes that since pharmacists were expected to work 99 hours, they were guaranteed that amount of money which accrued by working 99 hours at a certain hourly rate or hourly equivalent.

Yet it is clear that the pharmacists were not *guaranteed* any predetermined amount of money. It was impossible to tell what compensation a pharmacist would receive for a given pay period without referring to the number of hours worked and the hourly rate.

It cannot be said that merely because an employee was expected to work a certain number of hours per week that he always did so. Nor can it be said that because an employee was expected to work a certain schedule that he was in any sense *guaranteed* a certain compensation.

The cases cited by defendant are clearly inapplicable.[7] In those cases there was no doubt that some amount of money was guaranteed to the employees. In *Walling* and *McReynolds,* the guarantee came under the form of a guaranteed number of shifts of work. Instead of being guaranteed a certain sum of money for a week of work, an employee can be guaranteed that he will be able to work a comparable number of shifts or be paid their equivalent. He must be guaranteed the work or the equivalent pay though. In other words, if the employee is able to work he must be paid that which he was guaranteed—be it a set sum of money or a sum of money which would have accrued had the employee been able to work the shifts he had been guaranteed.

At Drug Fair, a pharmacist was never guaranteed any set salary. True, he had a basic schedule, but this is necessary for the efficient operation of any business. This basic schedule was often changed either by working extra hours or by working less. In every instance, the pharmacist's compensation, for the pay period, varied directly according to the number of hours worked.

■ While it is not necessary to decide so, since the court is convinced that no amount of money was guaranteed on a weekly *or* a bi-weekly basis, the court is of the opinion that a predetermined amount of compensation must be guaranteed for each *pay period.* Regulation 29 C.F.R. 541.118(a) states that an employee is compensated on a salary basis if he receives "each pay period * * * a predetermined amount * * * of compensation". Simply stated, a pay period is that amount of time worked for which a paycheck is issued. Since Drug Fair paid its pharmacists every week, they were on a weekly pay period. A glance at the plaintiffs' pay stubs will show that there was no predetermined amount paid every week.

■ Defendant also claims that it in good faith relied on the inaction of the Wage & Hour Administrator. Such reliance does not exonerate Drug Fair from liability for overtime compensation. Defendant's reliance on Section 10 of the Portal-to-Portal Act (29 U.S.C. § 259) is misplaced. That section frees the employer from liability if he in good faith relied on "any *written* administrative regulation, order, ruling, approval, or interpretation" or "any administrative practice or enforcement policy" of the Wage & Hour Administrator. The Regulations at 29 C.F.R. 790.13–790.19 clearly provide that reliance can only be placed on affirmative action by the Administrator which is in writing. There was never any affirmative policy statement issued by the Wage & Hour Administrator concerning Drug Fair employees.

The court is of the opinion that the plaintiffs are entitled to judgment for the unpaid overtime compensation.

Therefore, according to stipulation by counsel, and in light of this opinion, this case will be referred to the Court Auditor for recommendation as to the amount of money each plaintiff is entitled to receive.

Pursuant to Section 16(b) of the Act,[8] plaintiffs have claimed an amount equal to the unpaid overtime compensation as liquidated damages, a reasonable attorney's fee, and costs of the action.

In Overnight Motor Transportation, Inc. v. Missel, 1942, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, the Supreme Court

7. Walling v. Clinchfield Coal Corporation (4th Cir., 1946) 159 F.2d 395; McReynolds v. Pocahontas Corporation (4th Cir., 1951) 192 F.2d 301; Delano v. Armstrong Rubber Company (Conn.S.Crt. of Errors, 1950) 136 Conn. 663, 73 A.2d 828, cert. den. 340 U.S. 840, 71 S.Ct. 28, 95 L.Ed. 616.

8. 29 U.S.C. § 216(b)

established the rule that an award of liquidated damages is mandatory on the courts. A legislative intent to modify this rule is found in Section 11 of the so-called Portal-to-Portal Act.[9] This section vests the courts with discretion concerning liquidated damages "if the employer shows to the satisfaction of the court that [his] act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act."

The court is of the opinion that the employer has shown sufficient good faith to require denial of any sum for liquidated damages. A quick purview of the cases shows that practically any showing of good faith will obviate an employee's demand for liquidated damages. Of course, such is not the case in discussing whether good faith frees the employer from liability for the overtime. In that situation, as discussed above, strict compliance with Section 10 of the Portal-to-Portal Act is necessary.

 The court is of the opinion that Drug Fair had a reasonable belief that the plaintiffs were exempt,[10] that Drug Fair did not wilfully intend to violate the Act,[11] and that Drug Fair was reasonable in continuing its compensation practices because, though aware of these practices, no action was taken by the Wage & Hour Administrator.[12]

For these reasons, no liquidated damages will be allowed.

Section 16(b) also provides that employees who recover judgment are entitled to reasonable attorneys fees and costs. There has been no legislative modification of this rule. This award is mandatory and is not subject to judicial discretion. Wright v. Carrigg (4th Cir., 1960) 275 F.2d 448, 449; Foster v. Irwin d. b. a. Irwin Truck Line, (D.C.La., 1966) 258 F.Supp. 709, 712.

The case will be referred to the Auditor for recommendation as to the amount due each plaintiff. The court will withhold its decision as to a reasonable attorney's fee until the proceedings before the Auditor are complete.

This Opinion will be treated as the court's Findings of Fact and Conclusions of Law.

9. 29 U.S.C. § 260

10. Derose v. Eastern Plastics, Inc. (D.C. Pa.1955) 134 F.Supp. 805; Giannini v. Standard Oil Co. (D.C.Ind.1955) 130 F. Supp. 740.

11. Sawyer v. Bay State Motor Express Co. (D.C.Mass.1948) 89 F.Supp. 843.

12. Brown v. Dunbar & Sullivan Dredging Co. (2nd Cir. 1951) 189 F.2d 871.